UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JANE DOE 7, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: |
| | ) | |
| SOUTHEAST MISSOURI STATE | ) | |
| UNIVERSITY, | ) | **JURY TRIAL DEMANDED** |
| Serve: | ) | |
|   Dr. Carlos Vargas | ) | |
|   Southeast Missouri State University | ) | |
|   One University Plaza | ) | |
|   Cape Girardeau, MO 63701 | ) | |
| | ) | |
| | ) | |
| SEMO DEPARTMENT OF | ) | |
| PUBLIC SAFETY OFFICER | ) | |
| JYOTHI DIRNBERGER | ) | |
| Serve: | ) | |
|   Jyothi Dirnberger | ) | |
|   University Police | ) | |
|   1401 N. Sprigg | ) | |
|   Cape Girardeau, MO 63701 | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

COMES NOW the Plaintiff, Jane Doe 7, by and through her attorney Nicole Gorovsky of Gorovsky Law, LLC, and for her Complaint against Defendants, Southeast Missouri State University and Southeast Missouri State University Department of Public Safety Officer Jyothi Dirnberger, states as follows:

1. Plaintiff brings this lawsuit to hold Defendants responsible for the injuries she suffered due to gender discrimination following rape perpetrated upon her by a male student at

Southeast Missouri State ("SEMO") and to protect others from the pain of gender discrimination following sexual assault and rape.

## JURISDITION AND VENUE

2. Jurisdiction lies under 28 U.S.C. §1331 and § 1343(a)(4) in as much as this complaint presents a federal question.

3. Plaintiff brings this action in part pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. §1681) which is an act of Congress providing for protection of civil rights.

4. Venue in the Eastern District of Missouri is appropriate because the occurrences complained of took place in Cape Girardeau County, Missouri, and the Defendants and Plaintiff reside within the Eastern District of Missouri. 28 U.S.C. §1391.

## PARTIES

5. Plaintiff, Jane Doe 7, is an adult female and was at all time relevant to this complaint a student matriculating and living on the Southeast Missouri State University (SEMO) campus in Cape Girardeau, Missouri.

6. Upon information and belief, Defendant SEMO is a Missouri State University and a nonprofit corporation formed under the laws of Missouri and its headquarters are in Missouri. Originally formed in 1873, SEMO does business in Missouri and has obtained the benefit of Missouri laws for its main campus in Cape Girardeau, Missouri. SEMO is a Federally-funded program as it receives federal financial assistance in the form of financial aid for its students and further receives federal grants as required for litigation under Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681 *et seq.*

## FACTS APPLICABLE TO ALL COUNTS

7. In August 2016, Plaintiff was a freshman student at SEMO.

8. SEMO is a Federally Funded education program as it receives federal financial assistance in the form of financial aid for its students and further receives federal grants as required for litigation under Title IX of the Educational Amendments of 1972, 20 U.S.C §1681 *et seq*.

9. Plaintiff resided in Towers North Dormitory, which is located on the SEMO campus (1000 Towers Circle, Cape Girardeau, MO 63701).

10. On or around August 28, 2016, Plaintiff had only been at her new college, SEMO, for approximately one week.

11. In the early hours of August 28, 2016, Plaintiff was returning to campus from an off-campus party. Plaintiff consumed approximately five or six beers at the party. She took a sober car service for her drive back to campus.

12. During her sober car ride back, Plaintiff encountered a fellow SEMO student named Jordan Huerta but she did not learn his name at that time. Huerta offered to walk Plaintiff back to her dormitory. Plaintiff accepted his offer because she was a freshman student and was lost on an unfamiliar campus.

13. However, instead of taking her to her dormitory room in Towers North, Huerta took Plaintiff to his dormitory room located in Towers South.

14. Once in his dorm room, Huerta began to kiss Plaintiff and started to remove her clothing. During this time, Plaintiff told Huerta she needed to leave multiple times. Huerta implored Plaintiff to remain in his dorm room and Plaintiff became scared. She felt certain that if she tried to leave, Huerta might physically harm her.

15. Huerta then proceeded to rape Plaintiff as Plaintiff repeatedly told Huerta "no" and "stop, it hurts". Huerta also pushed Plaintiff's head down towards his crotch and forced her to engage in oral sex.

16. Huerta eventually ended the assault and went to the bathroom. While Huerta was in the bathroom, Plaintiff started getting dressed so that she could escape.

17. When Huerta left the bathroom, he got angry that Plaintiff was trying to leave. He tried to convince Plaintiff to stay, but she again asked for permission to leave, and Huerta finally relented. However, he was sure not to let Plaintiff just leave on her own, but instead insisted that he would walk her back to her dorm.

18. When Plaintiff finally arrived at Towers North Dormitory, she spotted a friend who was another student at Defendant SEMO. She walked away from Huerta and walked directly to the friend. She said to her friend, "I didn't know what I was going to do…I'm so glad I bumped into you." She burst into tears and told him she had been raped.

19. Plaintiff arrived at her dorm room and contacted the Resident Advisor ("RA") Kendra Reichling. Plaintiff told Ms. Reichling that she had been raped.

20. Plaintiff and Reichling contacted the Department of Public Safety ("DPS") – the Police Department on campus. Two officers from DPS arrived at Plaintiff's dorm room.

21. Officer Jyothi Dirnberger interviewed Plaintiff.  Plaintiff explained that she was sexually assaulted but that she did not know the name of the perpetrator. She was able to provide a physical description of Huerta to Officer Dirnberger.

22. After she spoke with Officer Dirnberger, Plaintiff went to the hospital where police took her clothes as evidence and Plaintiff endured a sexual assault examination otherwise known as a rape kit evidence collection exam.

23. Plaintiff was also tested for sexually transmitted infections.

24. The Sexual Assault Examiner found bleeding coming from Plaintiff's cervix as a result of the assault and discharge redness. In addition, Plaintiff had a bruise on her thigh and red raised lesion on her leg.

25. Plaintiff was prescribed antibiotics as a precautionary measure in case she acquired a sexually transmitted infection from the sexual assault.

26. The Sexual Assault Nurse Examiner interviewed Plaintiff at the hospital. Then, two days later, Plaintiff was given a forensic interview by Dedria Jordan at Beacon Health Center (73 Sheridan, Cape Girardeau, MO 63701). Between her interviews with Officer Dirnberger, the interview with the nurse examiner, and the forensic interview, Plaintiff had to re-tell and relive her experience of sexual assault at least three times.

27. During Plaintiff's forensic interview at Beacon Health Center, Ms. Jordan asked Plaintiff where she was before the assault, what the room looked like where she was assaulted, how much she had to drink before the assault, what types of sexual acts occurred during the assault, if Plaintiff consented to specific sex acts during the assault, and where in the dorm room specific sex acts occurred.

28. Quickly, within 24 hours of the assault, SEMO Department of Public Safety Officers identified the perpetrator as Jordan Huerta. However, neither SEMO or the Department informed Plaintiff of Huerta's name or anything about his identity.

29. Huerta provided a written statement to Defendant SEMO's department of public safety on August 28, 2016, the same day as the assault.  Plaintiff was never told that this happened.

30. Then, the following day, officers interviewed Huerta at the Department of Public Safety.

They never told Plaintiff who the rapist was.

31. Officers collected bed linens and two used condoms from Huerta's dorm room trash. One of those condoms was later identified as being used to rape Plaintiff and another was used for having sex with another woman hours later.

32. Officers took Huerta's DNA. Plaintiff was not told.

33. After the sexual assault but prior to September 5, 2016, officers gave Huerta a "no contact" order on behalf of Plaintiff, yet they did not tell Plaintiff about it.

34. On September 5, 2016, Huerta deliberately sat near Plaintiff in the dormitory food court, in violation of said no contact order. Plaintiff, while still not knowing his name, recognized him sitting near her in the food court. Huerta and two male friends accompanying him laughed at and taunted Plaintiff while Huerta violated the no contact order that Plaintiff did not know about.

35. Plaintiff was terrified and reported the incident to the Department of Public Safety. Despite her report, however, Huerta continued to harass and intimidate Plaintiff. In a second incident at the dormitory food court, Huerta intentionally ran his shoulder into Plaintiff as he walked past her, again intimidating her and violating the no contact order.

36. During the period from the assault to the fall of 2019, Defendant SEMO failed to meaningfully investigate the sexual assault after Plaintiff reported it and failed to inform Plaintiff regarding vital aspects of the investigation, like the identity of her perpetrator. This prevented Plaintiff from seeking a civil Order of Protection, understanding her rights as a victim under criminal law, and accessing her Title IX rights.

37. While Plaintiff recognized Huerta's face, she had no idea what his name was because he was being protected by Defendant SEMO. This continued for three years as Plaintiff

lived in a hostile environment.

38. Shortly after the rape, Plaintiff's family also contacted Officer Dirnberger. Officer Dirnberger refused to tell Plaintiff or her family the rapist's identity. Officer Dirnberger further said that that information was being withheld to protect the rapist and his family.

39. Plaintiff's family further contacted SEMO administration and asked for the identity of the rapist. Again, Defendant SEMO refused to provide that crucial information.

40. Plaintiff, while trying to complete her college education at SEMO after a traumatic rape, had to walk her campus in complete fear because she did not know the name of her assailant. She did not know where he would be next, if he would be in classes in which she enrolled or if he would become her next-door neighbor on campus. While his identity was protected by SEMO officials, he could walk the campus freely with no repercussions, knowing who she was and where she lived while she was prevented from knowing the same about him. This was all because Defendant SEMO failed to investigate and failed to even inform Plaintiff of her rights of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

41. Defendant SEMO's anti-harassment policies state that "Southeast Missouri State University, including its officers and its employees, is responsible for maintaining a working and learning environment free from sexual harassment." https://semo.edu/pdf/FinAdm_03-05_Policy.pdf

42. Defendant SEMO promises its students that "Students, staff, faculty, and administrators should know that the University is concerned about such behavior[sexual harassment] and is prepared to take preventative and corrective action, and also that individuals who engage in such misconduct are subject to appropriate disciplinary action, which may

range from reprimand to suspension or dismissal."

43. Defendant SEMO lists several rights afforded to victims of sexual violence and harassment which they violated in this case for years. These rights include, but are not limited to:

   a. "The right to be treated with respect by University officials;"

   b. "The right to be informed of the outcome and any sanction(s) of a campus disciplinary hearing involving sexual assault;"

   c. "The right to be informed about the process for adjudicating these cases and to be provided with resources and/or a resource person to assist you with understanding the process;"

   d. "The right to a campus restraining order or notice against trespass against another individual or individuals who have engaged in or threaten to engage in stalking, threatening, harassing, or other improper behavior that presents a danger to the welfare of the individual who has initiated the allegation;"

   e. "The right to notification of, options for, and available assistance in changing academic and living situations after an alleged sexual assault incident, if the reporting party so chooses and if such changes are reasonably available;"

   f. "The right to be notified of available counseling or student services for victims of sexual assault, both on campus and in the community."

   https://semo.edu/responsibleredhawks/sexual-violence.html

44. Neither Defendant SEMO's regulations nor Title IX, nor any law provides any "right" to withhold a perpetrator's name from a victim of sexual violence.

45. Defendant failed to provide Plaintiff with important updates and information regarding

her case. Furthermore, they failed to provide accommodations to Plaintiff after she suffered a traumatic sexual assault. These are violations of Defendant's own policies and Title IX.

46. It was over three years after the assault when Defendant SEMO's Dean of Students at the time, L.R. "Trae" Mitten, finally told Plaintiff that the rapist's name was Jordan Huerta. Mitten was a new Dean at the school, promoted after serving as Title IX Investigator at SEMO, and told Plaintiff that he would have handled her case differently and that he could not believe Defendant SEMO handled the case in this way.

47. In the three-year period after the sexual assault, no agent or representative of SEMO informed Plaintiff or her family about Plaintiff's rights under Title IX. Mitten was the first SEMO representative to even tell Plaintiff the identity of the perpetrator (again, several years after she was sexually assaulted). Yet, after Plaintiff hired an attorney, Mitten and Defendant SEMO ceased all communications with Plaintiff and her family thereby retaliating against Plaintiff for exercising her civil rights.

48. SEMO had protected Huerta over Plaintiff and kept Plaintiff completely in the dark, while Plaintiff suffered significant mental and emotional anguish, a hostile environment, physical danger, and trauma from being unprotected. She was diagnosed with post-traumatic stress disorder, severe episodes of major depressive disorder, generalized anxiety disorder, and situational mixed anxiety and depressive disorder.

49. In addition, Plaintiff suffered harassment and retaliation from fellow students, including her sorority sisters at Alpha Delta Pi over her reactions to the sexual assault.

50. Plaintiff was eventually hospitalized for suicidal ideation.

51. Educationally, Plaintiff struggled and lost a scholarship as a direct result from the trauma

she suffered stemming from her rape and SEMO's refusal to comply with Title IX. Plaintiff requires and has been receiving intensive therapy to address these issues stemming from the sexual assault and the institutional betrayal by SEMO.

## COUNT I
## VIOLATION OF TITLE IX
Against Defendant SEMO
(20 U.S.C. § 1681, et seq.)
(Deliberate Indifference to Sexual Harassment and Hostile Environment)

52. All paragraphs above are incorporated herein by reference.

53. The sex-based harassment articulated above was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by Defendant SEMO.

54. Defendant SEMO had actual knowledge that Plaintiff was sexually assaulted by Huerta. They had actual knowledge that Plaintiff wanted to know Huerta's identity in order to take steps to protect herself and seek justice, but they refused to provide that information. They prevented her from beginning the Title IX process. They prevented her from seeking a civil Order of Protection.  They prevented her from full access to civil and criminal courts.

55. Defendant SEMO's agent, Dean Mitten, admitted to these failures.

56. Defendant SEMO failed to enforce Plaintiff's no-contact order, failed to allow Plaintiff to seek her own safety measures and failed to provide Plaintiff with support so she could safely access her education free from gender discrimination and a discriminatory hostile environment.

57. Instead, Defendant SEMO acted with deliberate indifference to the point that Plaintiff's

fear of Huerta and trauma after he sexually assaulted her caused her significant mental and emotional anguish - driving her to suicidal ideations and hospitalization. She struggled at Defendant SEMO academically to the point she lost a scholarship and socially because she faced retaliation from her peers.

58. These actions amount to Defendant SEMO creating and/or subjecting and contributing to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by another student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the Defendant's failure to follow their policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

59. Defendant SEMO and its officials had actual knowledge of the sexual assault and the resulting harassment and sex discrimination of Plaintiff created by its failure to follow the investigative and due process procedures of its own policies, as well as federal and state law.

60. Defendant SEMO's failure to promptly and appropriately respond to the reported sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Defendant SEMO's education program in violation of Title IX.

61. Defendant SEMO failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

62. Defendant SEMO persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

63. Upon information and belief, Defendant SEMO engaged in a pattern and practice of behavior designed to discriminate against students like Plaintiff who reported sexual assaults and harassment and to protect perpetrators at the expense of students' safety.

64. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students. Examples which demonstrate Defendant SEMO's disparate treatment of female students and clear gender discrimination include but are not limited to:

    a. Defendant SEMO's failure to properly investigate Plaintiff's reported sexual assault;

    b. Defendant SEMO's failure to inform Plaintiff about the identity of her male rapist for approximately three years after she was raped;

    c. Defendant SEMO's failure to update Plaintiff about the investigation or her rights during said investigation;

    d. Defendant SEMO's refusal to take any meaningful action when Plaintiff's male rapist, Huerta, freely walked Defendant SEMO's campus including in a manner that violated Plaintiff's no contact order;

    e. Defendant SEMO's failure to provide any meaningful services to Plaintiff as she struggled with her mental and emotional wellbeing, as well as her academics; and

    f. Defendant SEMO's failure to curb any of the retaliation Plaintiff faced from her fellow students, including the perpetrator, after reporting the sexual assault.

65. As a result of Defendant SEMO's deliberate indifference, Plaintiff has suffered emotional

distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant SEMO's deliberate indifference to her rights under Title IX.

### COUNT II
### VIOLATION OF TITLE IX
Against Defendant SEMO
(20 U.S.C. § 1681, et seq.)
(Failure to accommodate, provide interim safety measures and/or prevent retaliation as required by Title IX)

66. All paragraphs above are incorporated herein by reference.

67. Defendant was further deliberately indifferent to the acts of student-on-student harassment and retaliation in that it:

    a. Refused to enforce the no contact orders issued by Defendant SEMO;

    b. Withheld information from Plaintiff regarding Plaintiff' sexual assault – most notably the identity of the person who raped her – despite multiple requests for said information so she could protect herself;

    c. Directed Mitten to cease contacting Plaintiff upon her acquisition of legal counsel;

    d. Withdrew Plaintiff's scholarship after her academic performance suffered as a direct result of the trauma she suffered from her sexual assault; and

    e. Failed to respond to reports that Plaintiff was facing retaliation and harassment from other students as a result of her reporting her sexual assault.

68. All of these actions demonstrated that Defendant SEMO failed to accommodate Plaintiff after she was sexually assaulted and failed to protect Plaintiff from retaliation upon reporting her sexual assault.  These actions – or lack thereof – are the epitome of

deliberate indifference.

69. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under Title IX.

### COUNT III
### 1983 VIOLATION
Against Defendant SEMO and Department of Public Safety Officer Jyothi Dirnberger
(42 U.S.C. § 1983.)

70. All paragraphs above are incorporated herein by reference.

71. Defendant Jyothi Dirnberger is named in this claim in her official and individual capacity.

72. Defendant SEMO and Department of Public Safety Officer Jyothi Dirnberger acted at all times relevant herein under color of state law.

73. Under the Fourteenth Amendment, Plaintiff had the right as a public university student to personal security and bodily integrity and Equal Protection of Laws. While acting under color of state law, Defendants deprived Plaintiff of these federal rights.

74. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by:

   a. failing to reveal the name of the person who raped Plaintiff to Plaintiff;

   b. actively concealing the identity of the perpetrator in this matter such that Plaintiff could not seek civil protection, or criminal or civil justice;

   c. failing to investigate the perpetrator's misconduct;

    d.   failing to appropriately discipline the perpetrator;

    e.   failing to adequately inform Plaintiff of her rights with regard to the perpetrator in terms of seeking safety measures from the school and from the justice system;

    f.   by actively preventing Plaintiff from seeking justice and protective measures against the perpetrator; and by

    g.   manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff.

75. As a result of Defendants' actions and/or failures to act, Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants, as follows:

    A. Compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances;

    B. Punitive damages;

    D. Statutory interest;

    E. Costs; and

    F. Reasonable attorney fees.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through her attorneys, Gorovsky Law, LLC, demands a trial by jury.

Dated: August 12, 2020                                  Respectfully submitted,


                                                        */s/ Nicole E. Gorovsky*
                                                        Nicole E. Gorovsky, MO Bar #51046
                                                        GOROVSKY LAW, LLC
                                                        222 S. Meramec Avenue, Suite 202
                                                        St. Louis, Missouri 63105
                                                        Phone: (314) 272-3255
                                                        Fax:    (314) 787-6101
                                                        Sarah@GovorskyLaw.com
                                                        Nicole@GorovskyLaw.com