**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

JANE DOE 7,                                    )
                                               )
                    Plaintiff,                 )
                                               )
        vs.                                    )        Case No. 1:20-CV-00172 JAR
                                               )
BOARD OF REGENTS, SOUTHEAST                    )
MISSOURI STATE UNIVERSITY, et al.,[1]          )
                                               )
                    Defendants.                )

**MEMORANDUM AND ORDER**

Plaintiff Jane Doe 7 was a freshman at Southeast Missouri State University ("SEMO") in

August 2016 when she was raped by a fellow student on campus. Plaintiff alleges the response to

her sexual assault was deliberately indifferent and deprived her of access to educational benefits

or opportunities provided by SEMO. She asserts claims under Title IX of the Education

Amendments Act of 1972, 20 U.S.C. § 1861(a) ("Title IX") and 42 U.S.C. § 1983: violation of

Title IX based on SEMO's deliberate indifference to sexual harassment and hostile environment

(Count I); violation of Title IX based on SEMO's failure to accommodate, provide interim safety

measures, and/or prevent retaliation (Count II); violation of Plaintiff's right to personal security

and bodily integrity under 42 U.S.C. § 1983 by both SEMO and SEMO Department of Public

Safety Officer Jyothi Dirnberger ("Dirnberger") (Count III); and violation of Title IX based on

SEMO's gender discrimination in education (Count IV). (Amended Complaint ("AC"), Doc. No.

30). Plaintiff seeks compensatory damages, statutory interest, attorneys' fees and costs.[2]

---

[1] Pursuant to RS Mo. § 174.040, the Board of Regents of Southeast Missouri State University, not the institution itself, is the proper entity "to sue and be sued." Thus, the proper defendant in this suit should be identified as Board of Regents, Southeast Missouri State University.

[2] Plaintiff has voluntarily dismissed her claim for punitive damages. (See Doc. No. 68 at 3).

This matter is now before the Court on the parties' cross-motions for summary judgment. Plaintiff moves for summary judgment on her Title IX claims against SEMO (Doc. No. 40); Defendants move for summary judgment on all of Plaintiff's claims (Doc. No. 44). The motions are fully briefed and ready for disposition.

## I.      Facts[3]

SEMO, a state university located in Cape Girardeau, Missouri, is a federally funded education program under Title IX. In August 2016, Plaintiff was a freshman at SEMO. On the night of August 27, 2016, she and a friend attended an off-campus fraternity party. In the early morning hours of August 28, 2016, Plaintiff left the party and took a sober car back to campus. There Plaintiff encountered a male student unknown to her who offered to take her to her dorm room. The male student was later identified by SEMO Department of Public Safety ("DPS") Officers as Jordan Huerta ("Huerta"). Instead of going back to Plaintiff's room, however, Huerta took her to his room where he raped her. After the assault, Huerta took Plaintiff back to her dormitory.

Upon returning to her dorm room, Plaintiff told her roommate she had been raped. Her roommate called the Residence Advisor who in turn called campus police. DPS Officer Dirnberger and DPS Officer Sergeant Anthony Cooper responded to the call. Officer Dirnberger took Plaintiff's statement and then went with Plaintiff to the hospital for a rape kit test. At that time, Plaintiff advised Officer Dirnberger she did not want to press criminal charges because she was afraid of the perpetrator.[4] While at the hospital, Plaintiff met with SEMO crisis counselor

---

[3] The facts are taken from the parties' statements of uncontroverted material facts (Doc. Nos. 42, 46) and additional statements of uncontroverted material facts (Doc. Nos. 51, 66) and are not in dispute except where so noted.

[4] DPS did submit charges to the Cape Girardeau Prosecuting Attorney as part of their investigation process; however, the Prosecuting Attorney declined to prosecute.

Donna St. Sauver who arranged outside counseling services for Plaintiff and gave Plaintiff the option to meet with her the next day. Plaintiff saw St. Sauver a few times.

By the end of the day on August 28, 2016, DPS investigators had identified Huerta as Plaintiff's assailant but according to Plaintiff, neither SEMO nor DPS informed her of Huerta's identity. (When Plaintiff was informed of Huerta's identity is a disputed issue of fact.) Once identified, SEMO issued a verbal no-contact order to Huerta. After August 28, 2016, Plaintiff had no further contact with Officer Dirnberger.

On August 29, 2016, Dr. Randy Carter, then Assistant Dean of Students overseeing SEMO's Office of Student Conduct, met with Huerta and his mother. Huerta was issued a Letter of No Contact,[5] which he signed.

On September 6, 2016, Plaintiff noticed Huerta sitting behind her in her dormitory cafeteria and recognized him as her assailant. The facts surrounding this incident are disputed. According to Plaintiff, Huerta followed her to the mail room while pointing and laughing. SEMO asserts that Huerta never spoke to Plaintiff and that there was no physical contact between the two. In any event, Plaintiff contacted DPS who immediately responded and investigated. Thereafter, SEMO gave Huerta "the option to move off-campus" after "people started getting word that he may be the accused student" and he did move into a different dormitory on the other side of campus.

During the relevant time period, SEMO had a policy for handling Title IX sexual assault cases involving its students entitled "Guidelines for Defining and Adjudicating Sexual Assault Cases Involving Students." The policy was published on SEMO's website.

---

[5] A Letter of No Contact is a university-related document that prohibits students from having any contact during the time the guideline is in place. (Doc. No. 42-19 at 9).

3

SEMO's policy provided information regarding the rights and responsibilities of both the accused student and the complainant (sometimes referred to as the victim); reporting and resource options; as well as confidentiality information. Students found responsible for sexual assault or sexual misconduct face a range of sanctions, including suspension or expulsion.

SEMO's policy set out the steps to be followed in the process of a Student Conduct investigation as follows:

(1) Upon receipt of a complaint by the Office of Student Conduct, both DPS and SEMO's Title IX Coordinator are notified.[6]

(2) Determine if available resources (mental health/medical) have been made available to the complainant.

(3) Determine if a law enforcement investigation is occurring.

(4) If the complainant intends to remain anonymous, then a "Reluctant Witness Letter" is provided to the student (through Counseling and Disability Services or other office if necessary). If the complainant wishes to pursue a University and/or criminal case, explain the process and again make sure that the complainant is briefed on available resources.

(5) Contact accused student and initiate "Letter of No Contact" and make any other necessary modifications in his/her living, classroom, or campus circumstances. Complete any other interim measures that are necessary and explain the student conduct process to the accused student.

(6) Interview complainant, accused student, and any other witnesses.

(7) Contact Title IX Coordinator via email and provide summary of fact finding – determination is made about Official Charge Letter.

(8) (If applicable) Charge Letter is sent to accused student and judicial conference is arranged. Case reports and information are read, explained, and/or discussed with accused student and complainant.

(9) Hearing is scheduled and completed with the Administrative Panel for sexual assault and sexual misconduct cases. Complainant may appear in person, via

---

[6] SEMO's policy guidelines provided that in the absence of a complainant (and/or if a complainant decides not to participate in the student conduct process) SEMO may initiate a complaint against an accused student "if that is in the best interest of the health and safety of the University."

4

speaker phone, or may choose not to appear. Complainant may provide a victim impact statement to be read by hearing panel prior to sanctions being imposed.

(10) Results of hearing are given in writing to accused student as hearing concludes.

(11) Results of hearing are provided to complainant in writing via email.

(See generally Doc. No. 42-19). SEMO's Title IX Coordinator is charged with "making sure that the process is followed appropriately and that both the rights of the complainant and the accused student are protected in the process." (Id.).

SEMO's policy further provides that student victims have the right to be notified of available counseling or student services as well as options for changing academic and living situations if such changes are "reasonable available"; the right to make a victim-impact statement to the hearing board; the right to a campus restraining order or notice against trespass; and the right to have a complaint of sexual misconduct responded to quickly and with sensitivity by campus police and member of the Office of Student Conduct.

Among the rights of the accused are the right to protection under the Family Educational Rights and Privacy Act; the right to notice of charges and procedural information; the right to have access to and to examine all records and evidence in the case; the right to maintain academic work through reasonable accommodations; the right to rebut the testimony of adversarial witnesses; and the right to an advisor.

Also during the relevant period, incoming SEMO students and their parents received a letter from the Dean of Students concerning the Student Code of Conduct. Incoming students were also required to complete the My Student Body and First STEP programs, and an orientation course entitled SE 101, which SEMO asserts covered Title IX, sexual harassment, sexual misconduct, and methods of reporting incidents of sexual assault. Plaintiff disputes that these programs addressed Title IX or students' rights after a sexual assault on campus.

5

The parties dispute when Plaintiff was contacted by SEMO officials following the assault. According to Defendants, Kasey Fraser-Smith, a Title IX investigator with the Office of Student Conduct, first met with Plaintiff on September 15, 2016 to discuss the student conduct process and again on October 25, 2016 to interview her regarding the assault. Plaintiff does not remember meeting with Fraser-Smith on those dates and asserts that Fraser-Smith first reached out to her on October 10, 2016.

On November 1, 2016, Fraser-Smith met with Huerta and his mother to discuss SEMO's judicial and hearing process. Huerta declined to be interviewed without an attorney present. On November 14, 2016, Fraser-Smith sent a charge letter request to Sonia Rucker. Rucker issued a formal charge against Huerta for violations of student conduct on November 18, 2016. The charge was emailed from Fraser-Smith to Huerta; Plaintiff was not copied on the email. Huerta voluntarily withdrew from SEMO before the student conduct hearing set for December 1, 2016, and SEMO issued a Notice Against Trespass to Huerta for any and all campus facilities as well as surrounding areas, i.e. parking lots and grounds.

Plaintiff continued to attend SEMO following the assault. She lived on campus for the remainder of her freshman and sophomore years and moved off campus for her junior and senior years. In the first semester of her junior year, Plaintiff was hospitalized for a week after experiencing a breakup with her boyfriend and ongoing stress from her freshman year and missed a month of school. During that time, Plaintiff was in contact with L. R. "Trae" Mitten, a Title IX investigator from SEMO's Office of Institutional Equity and Diversity. Mitten worked with Plaintiff's teachers to ensure that her coursework was accepted and that she completed her classes.

During the first semester of her senior year, Plaintiff was bullied by some of her sorority sisters, with whom she was living, for going home during recruitment. She raised the bullying

issue with Mitten, who intervened on Plaintiff's behalf to help resolve the bullying issue. Plaintiff moved home for the second semester of her senior year. Mitten again worked with Plaintiff and her teachers to get her the classes she needed to graduate. Plaintiff graduated in the spring of 2020.

## II.      Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine  dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Where parties file cross-motions for summary judgment, the legal standard does not change. Each motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943, 947 (E.D. Mo. 2014).

## III.     Title IX

"Title IX provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.' " Does 1-2 v. Regents

of the Univ. of Minn., 999 F.3d 571, 577 (8th Cir. 2021) (quoting 20 U.S.C. § 1681(a)). Student-on-student sexual assault and sexual harassment constitute forms of sex discrimination under Title IX. Hughes v. Missouri Baptist Univ., No. 4:19-CV-02373-AGF, 2021 WL 2042264, at *9 (E.D. Mo. May 21, 2021) (citing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999); Shank v. Carleton Coll., 993 F.3d 567, 573 (8th Cir. 2021)).

Victims of student-on-student sexual assault or sexual harassment have a private right of action for damages against educational institutions like SEMO that receive federal funding. Shank, 993 F.3d at 573. But an educational institution is only liable under Title IX for "its own misconduct." Ostrander v. Duggan, 341 F.3d 745, 750 (8th Cir. 2003) (citing Davis, 526 U.S. at 640). "A plaintiff seeking to prove a Title IX violation in the wake of a peer sexual assault must establish that the institution was: (1) deliberately indifferent, (2) to known acts of discrimination, (3) which occurred under its control." Shank, 993 F.3d at 573 (citation omitted). "A Title IX plaintiff is also required to show the discrimination was so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational opportunities or benefits provided by the school." Id. (citation omitted). Finally, "[t]o be actionable an institution's deliberate indifference must either have caused the harassment or made students vulnerable to it." Roe v. St. Louis Univ., 746 F.3d 874, 882 (8th Cir. 2014). This requires a Title IX plaintiff to demonstrate a "causal nexus" between the college's conduct and the student's experience of sexual harassment or assault. Shank, 993 F.3d at 573 (citing K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1058 (8th Cir. 2017).

"Deliberate indifference is a stringent standard of fault that cannot be predicated upon mere negligence." Doe v. Dardanelle Sch. Dist., 928 F.3d 722, 725 (8th Cir. 2019) (quoting Doe v. Flaherty, 623 F.3d 577, 584 (8th Cir. 2010)). In the Title IX context, deliberate indifference to peer harassment requires a showing that the educational institution's "response to the harassment

or lack thereof is clearly unreasonable in light of the known circumstances." <u>Davis</u>, 526 U.S. at 648. This "clearly unreasonable" standard is intended to afford flexibility to school administrators and prevent courts from "second-guessing the disciplinary decisions made by school administrators." <u>Dardanelle</u>, 928 F.3d at 726. Such flexibility is particularly important when considering administrators' dual interests in protecting the rights of student victims and those of students accused of sexual misconduct. <u>See</u> <u>Doe v. Univ. of Arkansas – Fayetteville</u>, 974 F.3d 858, 868 (8th Cir. 2020) (holding that a university's mishandling of a sexual misconduct disciplinary proceeding gave rise to a plausible Title IX claim by the accused). The deliberate indifference standard is often a fact question, but "[i]n an appropriate case, there is no reason why courts, on a motion … for summary judgment … could not identify a response as not 'clearly unreasonable' as a matter of law." <u>Davis</u>, 526 U.S. at 649.

## IV.     Discussion

### A.     Motion to strike

As a threshold matter, Plaintiff moves to strike the "History" section of Defendants' Memorandum of Law in Support of their Motion for Summary Judgment as unsupported by the evidence. She argues this section of Defendants' memorandum recites facts that are different from those set forth in their Statement of Uncontroverted Material Facts and fails to include citations to any record evidence in the case. While Plaintiff seems to suggest that Defendants' History section lacks evidentiary support, she fails to specifically identify which facts therein are unsupported by the record.

Fed. R. Civ. P. 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly." 2 James W. Moore, et al., <u>Moore's Federal Practice</u> § 12.37[2]

(3rd ed. 2012). Fed. R. Civ. P. 7(a) defines "pleadings" as a complaint, an answer to a complaint, an answer to a counterclaim, an answer to a cross-claim, an answer to a third-party complaint and a reply to an answer. See id. "Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 Moore's Federal Practice § 12.37[2]. This Court has generally restricted the use of motions to strike to material contained in pleadings. See, e.g., Donnelly v. St. John's Mercy Med. Ctr., No. 4:08-CV-347 CAS, 2009 WL 1259364, at *1-2 (E.D. Mo. May 5, 2009) (statement of uncontroverted material facts and response to motion for summary judgment were not pleadings and could not be attacked with a motion to strike); Coleman v. City of Pagedale, 4:06CV01376 ERW, 2008 WL 161897, at *4 (E.D. Mo. Jan. 15, 2008) (sur-reply and memorandum were not pleadings and could not be attacked with a motion to strike). Defendants' memorandum in support of summary judgment is not a pleading. Therefore, a motion to strike under Fed. R. Civ. P. 12(f) is inapplicable and will, therefore be denied.

### B.    Title IX claims against SEMO

Plaintiff argues she is entitled to summary judgment on her Title IX claims because she has established that SEMO was deliberately indifferent to her sexual assault. Her complaint includes numerous allegations of SEMO's deliberate indifference. In Count I, she asserts that SEMO's refusal to tell her the identity of the person who assaulted her left her more vulnerable to future harassment because she was constantly fearful of encountering him on campus. In Count II, Plaintiff asserts that SEMO failed to inform her of her rights under Title IX, failed to provide her with educational accommodations, and failed to protect her from retaliation. In Count IV, she alleges SEMO's student conduct process discriminates against the victims of sexual violence and sexual harassment on campus, the majority of whom are female students. Plaintiff points to the fact that it took SEMO three months to issue a charge in her case and that

during that time, Huerta was automatically entitled to "reasonable accommodations" to maintain his academic work, whereas she was required to prove a disability sufficient to warrant such accommodations. In response to Plaintiff's motion and in support of its own, Defendants argue the record does not support a finding of deliberate indifference because their actions were objectively reasonable in all respects. The Court will address each of the parties' arguments in turn.

**Count I**

Plaintiff contends SEMO was deliberately indifferent by withholding the name of her assailant and leaving her vulnerable to further harassment as evidenced by her encounter with Huerta approximately one week after the assault, when she saw him in her dormitory cafeteria and recognized him as her assailant. DPS officers responded immediately and investigated the incident. Thereafter, SEMO moved Huerta into a different dormitory on the other side of campus. Plaintiff asserts that had she known Huerta was her assailant, she could have tracked him and found ways to avoid the places he was likely to be on campus. Without this information, Plaintiff asserts she was constantly fearful of running into Huerta on campus.

SEMO asserts that it thoroughly investigated Plaintiff's assault, made sure Plaintiff and Huerta had no classes in common, and arranged for counseling services for Plaintiff. SEMO restricted Huerta's conduct by issuing no-contact orders to Huerta immediately after he was determined to be the perpetrator and moved him to a different dorm complex. Following its investigation, a charge letter was issued to Huerta in November 2016. SEMO argues these actions do not evidence deliberate indifference.

When Plaintiff was informed of Huerta's identity is a disputed fact issue. Defendants maintain that Plaintiff would have been told Huerta's name after he signed the No-Contact Letter

11

on August 30, 2016[7] and that Fraser-Smith "confidently believes" she so informed Plaintiff during a meeting either on September 15, 2016 or October 25, 2016. Plaintiff on the other hand recalls asking for the name of the perpetrator and being told she was not allowed to know it. She does not remember meeting Fraser-Smith on those dates and asserts that it was not until her meeting with Trae Mitten in the fall of 2019, some three years after her assault, that she was finally told Huerta's name. Even assuming SEMO withheld Huerta's name from Plaintiff, the record evidence fails to support a finding that this exposed Plaintiff to additional sexual harassment so severe, pervasive, and offensive that it deprived her of equal access to the educational benefits and opportunities provided by SEMO.

A student's depression and fear of encountering the assailant on campus, without more, is insufficient to show actionable harassment. See Dardanelle, 928 F.3d at 727 (student victim's academic performance improved after harassment and facts did not indicate any negative interaction with harasser after initial harassment occurred); see also Culver-Stockton Coll., 865 F.3d at 1058 (dismissing the plaintiff's deliberate indifference claim because "[a]t most, [plaintiff] link[s] the [defendant's] inaction with emotional trauma [plaintiff] claims she experienced following the assault"); Garrett v. University of South Florida Bd. of Trustees, 448 F. Supp. 3d 1286, 1299 (M.D. Fla. 2020) ("[T]he mere prospect of the alleged assailant's entering the victim's range of perception makes the plaintiff liable or vulnerable to harassment only if the university fails to restrict the conduct of an alleged assailant after the sexual misconduct."). To be actionable, the harassment must have "a systemic effect" of denying the student victim equal access to education. Davis, 526 U.S. at 652. While "[i]n theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect,"

---

[7] However, Randy Carter acknowledged there is no written documentation that the letter was shared with Plaintiff. (Doc. No. 46-3 at 32).

Davis, 526 U.S. at 652, the Supreme Court cautioned this was likely not the intent of Congress, id. at 652-53. Moreover, Eighth Circuit courts have found a single instance of harassment insufficient to impose Title IX liability. See Culver-Stockton Coll., 865 F.3d at 1057; Doe T.L.J. v. Univ. of Central Mo., Case No. 4:20-00714-CV-RK, 2020 WL 7700101 at *3 (W.D. Mo. Dec. 28, 2020).

The Court acknowledges that under certain circumstances, the fear of future encounters between a rape victim and his or her assailant could create an environment sufficiently hostile to deprive the victim of access to educational opportunities. See Fryberger v. Univ. of Ark., No. 5:16-cv-5224, 2019 WL 6119253, at *10 (W.D. Ark. Nov. 18, 2019). However, a victim's alleged general fear of running into her assailant must be objectively reasonable. Id. at *9 (citing Farmer v. Kansas State University, 918 F.3d 1094, 1104 (10th Cir. 2019)); see also Davis, 526 U.S. at 633. In Farmer for example, plaintiffs alleged their fears "forced them to take very specific actions that deprived them of the educational opportunities offered to other students," such as withdrawing from activities the university offered its students and avoiding going anywhere on campus without being accompanied by friends. 918 F.3d at 1105.[8]

Unlike the plaintiffs in Farmer, Plaintiff does not contend she was forced to take specific action that deprived her of educational opportunities offered to other students. She continued to live on campus and except for the sighting in the cafeteria, had no contact with Huerta and does not claim she was harassed by him after that. She did not withdraw from any extracurricular activities or change her academic schedule, since she and Huerta had no common classes. Moreover, Plaintiff was notified that Huerta withdrew from SEMO in November of 2016.

---

[8] The Farmer court cautioned that future courts "will undoubtedly be asked to draw lines on when a victim's fear of further sexual harassment is sufficient to deprive that student of educational opportunities" but expressed "no hesitation" in its present holding because the motion before the court was "a motion to dismiss, where all inferences are drawn in favor of Plaintiffs." Id. at 1105.

Nor has Plaintiff demonstrated a genuine issue for trial as to causation. Plaintiff contends that SEMO made her more vulnerable to post-assault harassment by withholding Huerta's name from her. But Plaintiff offers no evidence that would allow the Court to conclude that knowing Huerta's name would have alleviated her concerns about running into him on campus. Under governing precedent, a Title IX plaintiff must demonstrate a "causal nexus" between the college's conduct and the student's experience of sexual harassment. The Court is in no way minimizing the obvious trauma Plaintiff experienced; however, linking SEMO's actions or inactions to her fear of future encounters with Huerta is not enough. Carleton Coll., 993 F.3d at 576; Culver-Stockton Coll., 865 F.3d at 1058. For these reasons, Plaintiff's motion for summary judgment on Count I will be denied and SEMO's motion will be granted.

**Count II**

In Count II, Plaintiff alleges SEMO was deliberately indifferent to her sexual assault by failing to inform her of her rights under Title IX, failing to provide her with educational accommodations, and failing to protect her from retaliation. She argues it took SEMO three months to issue a charge in her case and that during that time, the student conduct process was skewed in favor of Huerta. Plaintiff contends that Huerta was automatically entitled to "reasonable accommodations" to maintain his academic work, whereas she was required to prove a disability sufficient to warrant similar accommodations. Plaintiff also notes that SEMO's Title IX Coordinator's only involvement in her case was to issue a charge letter and not to assist her with her Title IX rights. SEMO asserts that its policies and programs, including the My Student Body and First STEP programs and SE 101 orientation course, evidence its commitment to informing all its students about sexual harassment, sexual assault, and their rights under Title IX and that it provided Plaintiff with educational accommodations.

14

Plaintiff points to guidance from the Department of Education Office of Civil Rights ("OCR") issued in 2011 ("2011 Dear Colleague Letter") which requires a school to "take immediate action to eliminate [student-on-student] harassment [that creates a hostile environment], prevent its recurrence, and address its effects." OCR guidance further requires schools designate "at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX;" "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee sex discrimination complaints;" and "notify the complainant of his or her options to avoid contact with the alleged perpetrator and allow student to change academic or living situations as appropriate."

SEMO's alleged failure to comply with the Letter's guidance, however, does not establish the requisite actual notice and deliberate indifference. As the Eighth Circuit and other courts have noted, failure to follow Title IX's administrative regulations is not a sufficiently severe form of discrimination to give rise to a deliberate indifference claim. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 292 (1998) (A university's failure to promulgate a grievance procedure that complies with Title IX "does not itself constitute 'discrimination' under Title IX."); Rossley v. Drake Univ., 342 F. Supp. 3d 904, 931 (S.D. Iowa 2018), aff'd, 979 F.3d 1184 (8th Cir. 2020) (citing cases); Carleton Coll., 2019 WL 3974091, at *13 ("the DCL does not define what amounts to deliberate indifference"); St. Louis Univ., 746 F.3d at 883-84 (noninvolvement of the University's Title IX coordinator was not shown to be evidence of deliberate indifference); Doe ex rel. Doe v. Saint Paul Conservatory for the Performing Arts, No. 17-5032 (DWF/FLN), 2018 WL 2431849, at *3 (D. Minn. May 30, 2018) (determining the plaintiff had failed to state a claim for relief for deliberate indifference based on the school's violations of Title IX regulations); Doe v. St. John's Univ., No. CV 17-2413 (PAM/LIB), 2017

WL 4863066, at *3 (D. Minn. Oct. 26, 2017), dismissed sub nom. Doe v. St. John's Univ., Minnesota, No. 17-3528, 2018 WL 2324285 (8th Cir. Jan. 9, 2018).

It is undisputed that SEMO investigated Plaintiff's reported assault, issued a no-contact order against Huerta, and arranged counseling services for Plaintiff. As for accommodations, SEMO distinguishes between educational accommodations specifically related to classes (such as changing schedules or restricting Huerta from a particular building) from "official" accommodations (such as extra time on exams, time away from school, recorded lectures). Both Sonia Rucker, SEMO's Title IX Coordinator, and Randy Carter, SEMO's Dean of Students, testified that class-related accommodations are arranged through the Office of Student Conduct, whereas official accommodations for mental health issues, trauma, stress, or PTSD, are arranged through Counseling and Disability Services and require a documented disability. According to Carter, the definition of an official accommodation could have been expanded at the request of Plaintiff and her counselor to include sexual assault. (Doc. No. 46-3 at 26-29).

SEMO's Title IX policy provided that the complainant has the right to notification of options for, and available assistance in changing academic and living situations after an alleged sexual assault incident, if the victim so chooses and if such changes are reasonably available. Here, Plaintiff's education was not interrupted. She was not asked to change schedules since she and Huerta had no common classes. Following Plaintiff's hospitalization during her junior year, SEMO worked with Plaintiff and her teachers to ensure she was able to complete her coursework. When Plaintiff returned home in her senior year, SEMO again assisted her with the classes she needed to graduate on time. That Plaintiff believed SEMO should have done more is insufficient to create a triable issue as to whether SEMO was deliberately indifferent to her complaint. "Victims of peer harassment do not have a Title IX right to make particular remedial

16

demands." Hughes, 2021 WL 2042264, at *10 (quoting Maher v. Iowa State Univ., 915 F.3d 1210, 1213 (8th Cir. 2019)).

As for any delay in issuing a charge in her case, SEMO points out that when Plaintiff was informed of Huerta's identity (at the latest October 25, 2016), the student conduct process was ongoing, and Plaintiff only decided to proceed with the hearing process on October 14, 2016. SEMO's guidelines state that the goal is to complete the process within 30 to 60 working days, while recognizing that delays may occur. (Doc. No. 42-19 at 11). In interpreting the timing requirements for a Title IX investigation based on the statute itself, courts have repeatedly held that delay may indicate deliberate indifference only when it is "lengthy and unjustified." Tubbs v. Stony Brook Univ., 343 F. Supp. 3d 292, 311 (S.D.N.Y. 2018) (quoting Hayut v. State Univ. of New York, 352 F.3d 733 (2d Cir. 2003) (no lengthy and unjustified delay in a teacher-on-student harassment case, where the harassing conduct occurred in Fall 1998, the student submitted a written complaint several months later in February 1999, and the harasser resigned in March of 1999) (citing Bruneau v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 761 (2d Cir. 1998)); KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist., 531 F. App'x 132, 134 (2d Cir. 2013) ("There is no charge here ... that the school unreasonably delayed its response or failed to prevent future harassment."). See also Oden v. N. Marianas Coll., 440 F.3d 1085 (9th Cir. 2006) (finding that college was not deliberately indifferent to alleged harassment, even though it failed to hold a hearing until following school year, in violation of its own policy because "[t]he College began to act as soon as it became aware of Plaintiff's allegations" and "the record failed to demonstrate that the delay was more than negligent lazy or careless."). Compare Davis, 526 U.S. at 633-34 (school could be liable for deliberate indifference when the harassment was part of a "prolonged pattern," which the school knew about for months due to complaints from

parents and multiple victims, and the school did nothing to stop the harassment, even though the plaintiff's grades suffered and she contemplated suicide).

Plaintiff complains of harassment and bullying by her sorority sisters for going home for a day during recruitment. Assuming without deciding that this harassment was based on Plaintiff's sex and also sufficiently severe, the Court concludes as a matter of law that SEMO's response was not clearly unreasonable. Plaintiff raised the bullying issue with Trae Mitten. Plaintiff acknowledged that while Mitten helped address the bullying issue, she moved back home for the second semester of her senior year. It is undisputed that Mitten then worked with Plaintiff to get her into the classes she needed to graduate. Title IX does not require more. Hughes, 2021 WL 2042264, at *11.

As further evidence of SEMO's deliberate indifference, Plaintiff contends that after she retained counsel to represent her in this lawsuit, SEMO ceased all communication with her in retaliation for exercising her civil rights. (Doc. No. 30 at ¶ 47). SEMO responds that it acted upon notice of Plaintiff's attorney and at the direction of SEMO's legal counsel. "Following advice of counsel that at least arguably comports with school policy cannot be deemed deliberate indifference or clearly unreasonable conduct" by SEMO. Ross v. Univ. of Tulsa, 180 F. Supp. 3d 951, 972 (N.D. Okla. 2016), aff'd, 859 F.3d 1280 (10th Cir. 2017) (citing Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference....")). "The civil liability standard outlined by the Supreme Court [in Gebser, 524 U.S. at 290-91] does not require universities to behave perfectly or even very well. It requires universities to respond to reports of peer-on-peer sexual violence in a manner that is not clearly unreasonable or deliberately indifferent." Ross, 180 F. Supp. 3d at 972.

18

Plaintiff has suffered what no student should have to experience in college, and the Court is sympathetic to her circumstances. However, a reasonable jury could not find, based on the undisputed facts, that SEMO's response was clearly unreasonable. Thus, Plaintiff's motion for summary judgment on Count II will be denied and SEMO's motion will be granted.

**Count IV**

In Count IV, Plaintiff alleges SEMO's policies and process for addressing sexual harassment or violence on campus are discriminatory because they focus solely on the male perpetrator and his rights to the detriment of the female complainant and her rights. Plaintiff notes that SEMO officials met with Huerta to advise him of his rights the day after the assault, whereas no one met with her for at least two weeks following the assault. Even then, Plaintiff met with an investigator from the Student Conduct Office and not SEMO's Title IX coordinator. Plaintiff was not offered any options related to new housing, but Huerta was given the option to move. Huerta knew Plaintiff's identity; she was not permitted to know his. Plaintiff contends she was required to prove a disability to receive academic assistance/accommodations while Huerta automatically received academic support and accommodations.

SEMO asserts that a university's sexual misconduct disciplinary procedure must protect the interests of a student victim of sexual assault as well as the rights of the student accused of the assault. SEMO further asserts that Plaintiff was in fact provided with educational accommodations. It is undisputed that during those times Plaintiff was home during her junior and senior years, SEMO worked with Plaintiff and her teachers to ensure that she was able to complete her coursework and graduate on time.

Although Plaintiff takes issue with SEMO's investigation and disciplinary process, she has not come forward with any specific statements, conduct, or a pattern of decision-making suggestive of gender bias at SEMO. See St. John's Univ., 2017 WL 4863066, at *3. "[M]ere

allegations that a disciplinary process was unfair … do not create an inference of gender bias sufficient for Title IX." Stenzel v. Peterson, No. 17-580 (JRT/LIB), 2017 WL 4081897, at *5 (D. Minn. Sept. 13, 2017). Nor can SEMO's compliance with its own procedure establish any gender bias whatsoever. St. John's Univ., 2017 WL 4863066, at *3.

When it exists, bias certainly provides some indication that a university failed to use reasonable care in conducting its investigation. However, university "administrators are 'entitled to a presumption of honesty and integrity unless actual bias … can be proven.' " Richmond v. Fowlkes, 228 F.3d 854, 858 (8th Cir. 2000) (quoting Ikpeazu v. Univ. of Nebraska, 775 F.2d 250, 254 (8th Cir. 1985)). Where a plaintiff relies only on his or her belief that administrators acted with bias, the presumption is not overcome. Doe v. Univ. of St. Thomas, 368 F. Supp. 3d 1309, 1320 (D. Minn. 2019), aff'd but criticized, 972 F.3d 1014 (8th Cir. 2020) (citing de Llano v. Berglund, 282 F.3d 1031, 1035 (8th Cir. 2002)).

Because Plaintiff has offered no evidence to establish an issue of material fact as to whether SEMO's differential treatment of Plaintiff and Huerta, if any existed, was motivated by discriminatory intent, her motion for summary judgment on Count IV will be denied and SEMO's motion will be granted.

**C.      § 1983 claim against SEMO and Dirnberger in her official capacity**

In Count III of her complaint, Plaintiff asserts a claim for violation of her right to personal security, bodily integrity, and equal protection pursuant to 42 U.S.C. § 1983 against SEMO and DPS Officer Dirnberger in her individual and official capacities. Plaintiff alleges SEMO and Dirnberger failed to reveal the name of her rapist; actively concealed his identity so that she could not seek civil protection or criminal or civil justice; failed to investigate his misconduct; failed to appropriately discipline him; failed to adequately inform her of her rights in terms of seeking safety measures from the school and the justice system; actively prevented

20

her from seeking justice and protective measures; and displayed deliberate indifference to her assault and ongoing harassment. (AC at ¶ 74). SEMO generally reasserts its Title IX arguments in its motion for summary judgment on Plaintiff's § 1983 claim, i.e., that Plaintiff cannot show deliberate indifference, and argue that Officer Dirnberger is entitled to qualified immunity on the individual claim against her.

Plaintiff's claim is barred as against SEMO itself. A § 1983 action seeking damages may only be asserted against a "person" acting under color of state law. A State is not such a "person." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). A State also has sovereign immunity, or "Eleventh Amendment immunity," subject to certain exceptions that are not applicable here.[9] See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).

Most federal courts, including the Eighth Circuit, have held that state colleges and universities, as well as the boards that govern them, are "agencies or instrumentalities" of the state, and thus immune from suit in federal court. See, e.g., Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999); Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997); Treleven v. Univ. of Minnesota, 73 F.3d 816, 819 (8th Cir. 1996) (citing Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985); Walls v. Bd. of Regents of Se. Missouri State Univ., No. 1:09CV35RWS, 2009 WL 2170176, at *2 (E.D. Mo. July 20, 2009) (citing cases). It is also well established that § 1983 claims for damages against a state official in his or her official capacity are equivalent to claims against the State and therefore barred by the same principles. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); McKay v. City of St. Louis,

---

[9] There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. Barnes v. State of Missouri, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." Id. The second exception is when a state waives its immunity to suit in federal court. Id. at 65. Neither exception is applicable in this case.

960 F.3d 1094, 1102 (8th Cir. 2020). In light of these principles, Defendants' motion for summary judgment will be granted on this point and Plaintiff's § 1983 claims against SEMO and Officer Dirnberger in her official capacity are dismissed with prejudice.

### D.     § 1983 claim against Dirnberger in her individual capacity

To hold Officer Dirnberger personally liable under § 1983, Plaintiff must show that the conduct complained of was performed under color of state law and deprived her of rights, privileges, or immunities secured by the Constitution or federal law. See Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999) (citation omitted). Plaintiff has alleged that Officer Dirnberger deprived her of her constitutional right to personal security, bodily integrity, and equal protection by displaying deliberate indifference to her assault and ongoing harassment, specifically by failing to reveal the name of her rapist; failing to investigate his misconduct; failing to appropriately discipline him; and failing to adequately inform her of her rights in terms of seeking safety measures from the school and the justice system.[10]

Defendants first argue that Officer Dirnberger's actions do not amount to deliberate indifference towards Plaintiff. Officer Dirnberger was first to respond to Plaintiff's call to DPS. She began the investigation of the circumstances surrounding the assault and took Plaintiff to the hospital. Officer Dirnberger asked Plaintiff if she wanted to press charges and Plaintiff indicated that she did not. There is no evidence suggesting Officer Dirnberger was involved with the decision to submit charges to the Cape Girardeau Prosecuting Attorney. Officer Dirnberger ended her shift on the morning of August 28, 2016 and turned the investigation over to DPS. It is undisputed that Officer Dirnberger did not tell Plaintiff the name of the suspect, as she did not

---

[10] Plaintiff also asserts Dirnberger interfered with her right under the Missouri Constitution to information about the crime committed against her. Pursuant to Article 1, Section 32 of the Missouri State Constitution, crime victims are guaranteed certain notification rights and participation in the criminal

learn that Huerta had been identified as the perpetrator until she returned to the office later in the day on August 28, 2016. It is further undisputed that Officer Dirnberger had no further contact or communication with Plaintiff after she was discharged from the hospital. Plaintiff could not say what Officer Dirnberger could have done to further the investigation into Huerta's misconduct or how a campus police officer as opposed to an educator could have provided her with educational accommodations. (Doc. No. 46-2 at 23-24). Plaintiff had no information as to whether Officer Dirnberger had the authority to remove Huerta from campus. (Id. at 27-29).

The Supreme Court has held that deliberate indifference must be exhibited by "an official of the recipient entity with authority to take corrective action to end the discrimination." Shank, 2019 WL 3974091, at *10 (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). Nothing in the record before the Court shows that a DPS Officer by virtue of her position might have possessed authority to discipline a student assailant or to inform a victim of her rights under Title IX. Indeed, courts have found the role of campus security officers legally insufficient to give them authority to take corrective action under Title IX. Shank, 2019 WL 3974091, at *10 (citing Ross v. Univ. of Tulsa, 859 F.3d 1280, 1292 (10th Cir. 2017)). A reasonable jury could not find, based on the undisputed facts, that Officer Dirnberger's response to Plaintiff's sexual assault was clearly unreasonable under the known circumstances.

Alternatively, Defendants argue that Officer Dirnberger is entitled to summary judgment on the basis of qualified immunity. "At the summary judgment stage, a defendant is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kan. City Police Dep't, 570 F.3d 984, 988

---

justice system in Missouri. SEMO's student conduct process, however, is separate from a criminal proceeding, and the Prosecuting Attorney for Cape Girardeau County declined to prosecute.

(8th Cir. 2009). "The party asserting the defense of qualified immunity has the burden of establishing 'the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences.' " McGuire v. Cooper, 952 F.3d 918, 922 (8th Cir. 2020) (quoting White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008)).

Plaintiff has failed to set out any clearly established constitutional right violated by Officer Dirnberger. Although Plaintiff has a right under the Fourteenth Amendment to protection of her liberty interest in her personal privacy and bodily integrity, see Doe A v. Special School Dist. of St. Louis County, 637 F. Supp. 1138, 1144 (8th Cir. 1986), there is no evidence that any actions by Officer Dirnberger violated this right. The concept of a constitutional right to bodily integrity is the right to be free from "unauthorized and unlawful physical abuse" at the hands of the state by a state official acting or claiming to act under the color of the law, when the alleged conduct is of such a nature as to be "shocking to one's consci[ence]." Doe v. Univ. of Alabama in Huntsville, 177 F. Supp. 3d 1380, 1397 (N.D. Ala. 2016) (quoting United States v. Lanier, 520 U.S. 259, 262 (1997)). The assault on Plaintiff was carried out by a private actor, Huerta, not a state official or one acting under color of state law. By the time Plaintiff made a report, the assault had already occurred, and there is no evidence suggesting that SEMO or Officer Dirnberger was on notice, prior to the assault, that it might occur. Officer Dirnberger is, therefore, entitled to summary judgment based on qualified immunity because Plaintiff has not demonstrated that any clearly established constitutional right has been violated, and because Plaintiff cannot show that Officer Dirnberger actions were objectively unreasonable.

## V.    Conclusion

As previously stated, Plaintiff suffered what no student should have to experience in college and the Court is certainly sympathetic to her situation. SEMO could have handled certain aspects of its investigation into Plaintiff's assault differently, including informing her of her

perpetrator's name in a more timely and verifiable manner. That said, the law sets a high bar when it requires Title IX plaintiffs to show that an educational institution was deliberately indifferent in its response to rape, other forms of sexual assault, or sexual harassment. The inquiry is not whether the university could have done better; it is whether the university responded in a manner that is not clearly unreasonable or deliberately indifferent. Davis, 526 U.S. at 648; Dardanelle School Dist., 928 F.3d at 725. For the reasons discussed herein, no reasonable juror could conclude that Defendants' response to Plaintiff's sexual assault was deliberately indifferent in light of the known circumstances.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [40] is **DENIED.**

**IT IS FUTHER ORDERED** that Defendants' Motion for Summary Judgment [44] is **GRANTED.**

A separate Judgment accompanies this Memorandum and Order.


Dated this 5th day of May, 2022.


_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**